UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 15-637 JGB (DTBx)** | Date | June 24, 2015 |
|---|---|---|---|
| Title | *Nicolas Colunga, et al. v. Aurora Loan Services Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING IN PART and DENYING IN PART Defendants'
Motion to Dismiss (Doc. No. 12); (2) VACATING the June 29, 2015
Hearing; and (3) DENYING AS MOOT Plaintiffs' Counsel's Request to
Appear Telephonically at the Hearing (Doc. No. 17) (IN CHAMBERS)**

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.
(Doc. No. 12.)  The Court finds this matter appropriate for resolution without a hearing.  See
Local Rule 7-15; Fed. R. Civ. P. 78.  After considering all papers timely filed in support of and
in opposition to the Motion, the Court GRANTS IN PART and DENIES IN PART Defendants'
Motion to Dismiss.  The Court VACATES the June 29, 2015 hearing, and DENIES AS MOOT
Plaintiffs' Counsel's Request to Appear Telephonically at the hearing.

## I.  BACKGROUND

### A.  Procedural History

On December 19, 2014, Plaintiffs Nicolas and Martha Colunga ("Plaintiffs") filed a
Complaint in the San Bernardino Superior Court against Defendants Nationstar Mortgage LLC
("Nationstar") and Aurora Loan Services LLC ("Aurora") (collectively, "Defendants").
(Complaint, Doc. No. 1, Ex. A.)  Defendants removed the case to this Court on April 2, 2015.
(Not. of Removal, Doc. No. 1.)  Plaintiffs filed their First Amended Complaint on April 30,
2015.  ("FAC," Doc. No. 11.)

On May 21, 2015, Defendants filed a Motion to Dismiss the FAC.[1] ("Motion," Doc. No. 12.) Plaintiffs opposed on June 1, 2015. ("Opp'n," Doc. No. 15.) Defendants filed their reply on June 8, 2015. ("Reply," Doc. No. 16.)

## B. Allegations in the FAC

On March 2, 2006, Plaintiffs obtained a $344,500.00 loan from Lehman Brothers Bank, (FAC, Ex. A), to refinance their property at 18775 Sahale Ln., Apple Valley, CA 92307 ("Sahale Property"). (FAC ¶¶ 7-9). Plaintiffs allege that at some point their loan was transferred to Aurora, and that Aurora is the current beneficiary of the loan. (FAC ¶¶ 2, 10.)

Plaintiffs assert that they began to experience financial hardship and sought relief through a permanent loan modification; nevertheless, they claim they stayed current on all their mortgage payments up to that point. (FAC ¶¶ 11-12.) Plaintiffs allege that when they approached Aurora for a modification, Aurora advised Plaintiffs that Plaintiffs could not receive a modification unless their payments were delinquent. (Id. ¶ 13.) Aurora advised them to miss at least three payments before submitting their loan modification application package. (Id. ¶ 14.)

Plaintiffs assert that, in reliance upon Aurora's advice, Plaintiffs defaulted on their loan in 2010 and Aurora caused a Notice of Default ("NOD") to be recorded against Plaintiffs' property on December 10, 2010. (Id. ¶¶ 15-16). Plaintiffs then submitted a loan modification application package to Aurora. (Id. ¶ 18). Plaintiffs allege that, for months after their submission, Aurora requested many rounds of additional documentation, and Plaintiffs claim they always provided the requested documents. (Id. ¶¶ 19-20.) On November 18, 2011, Aurora rescinded the original NOD and caused a second NOD to be recorded on Plaintiffs' property. (Id. ¶¶ 21-22.) Finally, after months of requesting additional documents, Aurora denied Plaintiffs' loan modification application for failure to submit the requested documents. (Id. ¶¶ 23, 38.)

---

[1] Along with the Motion, Defendant filed a Request for Judicial Notice ("RJN," Doc. No. 13) asking the Court to take judicial notice of: 1) a Deed of Trust executed December 16, 2002 and recorded January 3, 2003 (No. 2003-0005516); 2) a Substitution of Trustee and Deed of Reconveyance recorded on March 27, 2006 (No. 2006-0204883); 3) a Short Form Deed of Trust and Assignment of Rents recorded on March 31, 2011 (No. 2011-0129031); 4) a Corporate Assignment of Deed of Trust recorded January 18, 2011 (No. 2011-0020716); 5) a Notice of Trustee's Sale recorded March 11, 2011 (No. 2011-0100879); 6) a Notice of Default recorded on November 18, 2011 (No. 2011-0493482); and 7) a Notice of Trustee's Sale recorded on October 19, 2012 (No. 2012-0415788). A court may take judicial notice of other matters of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)). Defendants have provided reference numbers for the documents, showing that they were in fact recorded; this demonstrates that the documents are public records. See Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases). The Court therefore grants the RJN and takes judicial notice of these documents.

Plaintiffs then submitted a second request for loan modification. (Id. ¶ 39.) Plaintiffs allege that Aurora nevertheless continued foreclosure proceedings and, on October 9, 2012, caused a Notice of Trustee's Sale to be recorded against Plaintiffs' property even while the second modification request was still under consideration. (Id. ¶¶ 23-24.) The second modification request was denied on the same grounds as the first. (Id. ¶¶ 25, 41.) Finally, Plaintiffs submitted another complete loan modification package in 2014 that was again denied by Aurora for failure to submit various requested documents. (Id. ¶¶ 26-28.)

The FAC alleges three causes of action against Defendants: (1) fraud; (2) negligent administration of Plaintiffs' loan modification applications; and (3) violation of California Business and Professions Code § 17200.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

## III.  DISCUSSION

### A.  Claim One: Fraud

In Plaintiffs' first cause of action, Plaintiffs allege Aurora represented to them that Aurora would consider Plaintiffs' loan modification, when Aurora had no actual intention of considering Plaintiffs' loan modification.  (FAC ¶¶ 42, 44-45.)

"The elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damages.'"  Anderson v. Deloitte & Touche, 56 Cal. App. 4th 1468, 1474 (Cal. App. 1st Dist. 1997) (quoting Molko v. Holy Spirit Assn., 46 Cal. 3d 1092, 1108 (Cal. 1988).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under Rule 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1018-19 (9th Cir. 2001)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  FRCP 9(b) applies to claims brought under the California's Unfair Competition Law.  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)); Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010).

While Plaintiffs have sufficiently alleged the "what" and the "how" of Defendants' alleged misrepresentation, Plaintiffs fail to state with sufficient particularity the "who", the "when," and the "where" of Defendants' alleged fraud.  True, "instances of corporate fraud may . . . make it difficult to attribute particular fraudulent conduct to each defendant as an individual," but the allegations must still be specific enough to provide Defendants with an opportunity to defend against Plaintiffs' claims.  Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir. 1989).  While Plaintiffs' inability to allege the specific identities of Defendants' representatives may be excused, Plaintiffs should be able to allege at least the gender and role in the company of the individuals Plaintiffs claim to have contacted along with "where" – whether in person or on the phone – these contacts occurred.  Furthermore, the six to twelve month time span during which Plaintiffs allege the misrepresentations took place is too broad.  (FAC ¶¶ 33, 37.)  Without more details regarding where Defendants made the alleged representations, who

Plaintiffs spoke to, and, at the very least, the month in which the representations were made, Defendants do not have enough notice of the specific misconduct Plaintiffs are alleging.

Accordingly, Defendants' Motion is GRANTED with respect to Plaintiffs' first cause of action and DISMISSES WITH LEAVE TO AMEND Plaintiffs' first cause of action. However, the Court notes that if Plaintiffs comply with the level of particularity specified above, they need not allege any more, and a further motion to dismiss would likely be denied.

### B. Claim Two: Negligence

Second, Plaintiffs allege Aurora was negligent in "failing to carefully review and/or keep track of the documents" Plaintiffs submitted in support of their modification application. (FAC ¶ 63.)

The elements of a cause of action for negligence are (1) duty, (2) breach of duty, (3) causation, and (4) damages. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001). Aurora argues that it does not owe Plaintiffs a duty and that Plaintiffs' negligence claim therefore must fail as a matter of law. (Motion at 6-7.) The Court disagrees.

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991). However, California courts have found that the general rule is not absolute: "Nymark and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money." Jolley v. Chase Home Finance, LLC, 213 Cal. App. 4th 872, 902 (2013); Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 946 (2014) (citing Jolley). Instead, determining whether a duty is owed depends on the balancing of several factors set forth in Biakanja v. Irving, 49 Cal.2d 647 (Cal. 1958). Jolley, 213 Cal. App. 4th at 901. Specifically, those factors include: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." Nymark, 231 Cal. App. 3d at 1098 (internal quotations omitted).

An important distinction in the case law arises in cases of loan modification. This Court agrees with Defendants that a residential lender does not owe "a common law duty of care to offer, consider, or approve a loan modification." Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 67 (Cal. Ct. App. 2013) (emphasis added). However, the recent California Court of Appeal decision in Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941

(Cal. Ct. App. 2014) also supports the proposition that once a lender has agreed to consider the loan modification, a duty of care may arise.[2]  Id. at 948.

        The Alvarez court's examination of those factors is fairly analogous to the facts of this case, and the Court finds that analysis persuasive.  The loan modification transaction was clearly intended to affect Plaintiffs – Defendants' decision would determine whether Plaintiffs could keep their home – and it was foreseeable that if Defendants did not properly process Plaintiffs' loan modification Plaintiffs would likely suffer significant financial damage and potentially lose their home.  With respect to the third factor, while Plaintiffs have not yet lost their home, they allege that they have already suffered significant harm.  (FAC ¶¶ 46, 48.)

        Regarding the fourth factor, the Alvarez court correctly recognized that, "'[a]lthough there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.'"  Id. at 949 (quoting Garcia v. Ocwen Loan Servicing, LLC, No. C 10–0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010)).  Fifth, the Alvarez court persuasively concluded that "[t]he borrower's lack of bargaining power coupled with conflicts of interest that exist in the modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification."  Alvarez, 228 Cal. App. 4th at 949.  Last, the Alvarez court correctly acknowledged the trend, as expressed by the California legislature through HBOR, toward requiring lenders and servicers to "deal reasonably" with borrowers to attempt to achieve "a workable loan modification."  Alvarez, 228 Cal. App. 4th at 950 (quoting Jolley, 213 Cal. App. 4th at 901).

        Here, as in Alvarez, the Biakanja factors weigh in favor of finding that Defendants owed a duty to carefully review and process.  Furthermore, Plaintiffs allege facts that, if true, plausibly suggest Defendants breached that duty of care by denying Plaintiffs' application for failure to submit requested documents when, as Plaintiffs claim, they submitted all requested documents including documents verifying their income.  Satisfying the third and fourth elements of a negligence claim, Plaintiffs allege that, as a result of Defendants' breach, Plaintiffs "incurred

---

[2] See also Meixner v. Wells Fargo Bank, N.A., No. 2:14-CV-02143-TLN, 2015 WL 1893514, at *12 (E.D. Cal. Apr. 24, 2015) ("Alvarez identified an important distinction not addressed by the Lueras reasoning—that the relationship differs between the lender and borrower at the time the borrower first obtained a loan versus the time the loan is modified. The parties are no longer in an arm's length transaction and thus should not be treated as such. While a loan modification is traditional lending, the parties are now in an established relationship. This relationship vastly differs from the one which exists when a borrower is seeking a loan from a lender because the borrower may seek a different lender if he does not like the terms of the loan. Therefore, this Court … concludes that a lender owes a duty of care to the borrower when considering his loan modification application.")

excessive late fees and interest, as well as other costs, loss equity in [their] home, the ruination of [their] credit, and the risk of losing their home at a foreclosure sale." (FAC ¶ 46.)

Plaintiffs have therefore successfully stated a claim for negligence and the Court DENIES Defendants' Motion with respect to Plaintiffs' second cause of action.

## C. Claim Three: Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200

Plaintiffs claim that Defendants engaged in unlawful, unfair, and fraudulent business practices. Specifically, Plaintiffs allege that Defendants' negligence in processing Plaintiffs' application was an unlawful business practice and that Defendants' misrepresentations that Plaintiffs' application would be considered were an unfair and fraudulent business practice.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Violations of other laws satisfy the "unlawful" prong and thus may be treated as unfair competition pursuant to the UCL. See Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (Cal. 2002). To the extent Plaintiffs' claims for UCL violations are based on Defendants' alleged fraudulent representations, they must still be pled with particularity under Rule 9(b); they fail to meet this standard for the reasons described above. Kearns, 567 F.3d at 1125. However, to the extent Plaintiffs' claims for UCL violations are based on Defendants' alleged negligence, Plaintiffs' allegations do state a claim of unlawful practices under the UCL.

Furthermore, the Court is unpersuaded by Defendants' argument that Plaintiffs have not alleged adequate standing to bring this claim. While, Plaintiffs have not yet lost their home, they do allege that they have suffered significant injury in fact. (See FAC ¶ 46) ("Plaintiffs allege that . . . they incurred excessive late fees and interest, as well as other costs, loss equity in her home, the ruination of her credit, and the risk of losing their home at a foreclosure sale.")

Therefore, Defendants' Motion is DENIED with regard to Plaintiffs' claim that Defendants' alleged negligence is an unlawful business practice in violation of the UCL, but GRANTED with regard to Plaintiffs' claim that Defendants' alleged fraud is in violation of the UCL. Plaintiffs' claim with regard to Defendants' alleged fraud in violation of the UCL is DISMISSED WITH LEAVE TO AMEND.

## D. Plaintiffs' Claims Against Nationstar

Strangely, while Plaintiffs name Nationstar as a Defendant, they fail to directly name Nationstar in any of their allegations. The term "Defendant" or "Defendants" in ¶¶ 34, 47, 61-64, 66-67, and 72-75 of Plaintiffs' FAC could be read to include Nationstar. Thus, Plaintiffs' claims against Nationstar are not waived. However, Plaintiffs' FAC, as pled, makes it overly difficult to tell which of Plaintiffs' claims are alleged against Nationstar. If Plaintiffs choose to amend their complaint, Plaintiffs would be well-served to delineate which of their allegations are made specifically against Nationstar.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion, and DISMISSES the FAC WITH LEAVE TO AMEND.  Plaintiffs shall, if they so choose, file a Second Amended Complaint by **July 10, 2015**.  The Court VACATES the June 29, 2015 hearing and DENIES AS MOOT Plaintiffs' Counsel's Request to Appear Telephonically at the hearing.

**IT IS SO ORDERED.**